```
            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
                     FAYETTEVILLE DIVISION
```

UNITED STATES OF AMERICA                              PLAINTIFF

      v.         Criminal No. 13-50096-001

ALAN W. BERGER                                        DEFENDANT

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Currently before the undersigned is the Defendant's **Motion to Suppress (Doc. 14)** and the Government's Response (Doc. 16) thereto.  The matter was originally scheduled for a hearing, but defense counsel subsequently advised the undersigned by electronic mail that Defendant stipulated the facts stated in the "**FACTS**" portion of the Government's Response were true and undisputed. The parties agreed that a hearing was not warranted, and it was, therefore, cancelled.  Upon due consideration of the Motion to Suppress and the Government's Response, the undersigned recommends that the motion be **DENIED**.

### FACTS

The following facts are recited verbatim from the Government's Response, and, as noted above, are stipulated to by the Defendant:

> Defendant . . . is charged with knowingly possessing a Seagate brand external hard-drive that contained visual depictions of Child Pornography[,] in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).
>
> In October of 2003, [Defendant] was convicted in the Southern District of Texas of using a means of

Interstate Commerce for Purposes of Persuading a Minor to have Sex. . . .  For this offense, [Defendant] received a sentence of Sixty (60) months imprisonment and a term of ten (10) years of supervised release. . . . Among the standard conditions of supervised release, [Defendant] was to "permit a probation officer to visit him . . . at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer." . . . Additionally, [Defendant] was subject to the following special conditions of release: 1 - The [D]efendant shall not view, possess or have under his . . . control any nude depictions of children, sexually oriented or sexually stimulating materials, including visual or . . . electronic media, computer programs or services[;] and 2 - the [D]efendant shall not subscribe to any computer online services, nor shall the [D]efendant access any internet services . . . and may not possess internet capable software on any hard drive, disk, floppy disk, compact disk, DVD, diskette, magnetic tape or any other electronic storage media. . ."

In 2008, [Defendant's] court mandated supervision by U.S. Probation was transferred to the Western District of Arkansas.  In December of 2008, . . . District Court Judge Jimm Larry Hendren [found Defendant violated the conditions of his supervision by] possessing internet capable devices and downloading adult pornography and child erotica. . . . At that time, the Court took the matter under advisement for six (6) months and then reinstated the original conditions of supervised release. . . .

On June 8, 2012, U.S. Probation Officer Abby McKinney (PO McKinney), along with U.S. Probation Officers Scott and Brunette (PO Scott and PO Brunette), conducted a home visit at [Defendant's] Springdale residence.  When they arrived at the residence, PO McKinney and Scott went to the front door and knocked, but no one responded.  PO Scott then yelled out, announcing that they (US Probation officers) were at the residence for a home visit and [Defendant] should open the door.  Again, there was no response.  At this time, the officers decided that PO McKinney and Brunette would return to the vehicle and try to make contact telephonically, while PO Scott would walk around the house to see if [Defendant's] dog was present.  Upon reaching the vehicle, PO Brunette informed PO McKinney

that he saw someone looking out of the residence through the blinds. At that time, the probation officers again approached the house and instructed [Defendant] to open the door, which at this point he did. At the front door, PO McKinney explained to [Defendant] that they were doing a home visit and asked him to show them inside the residence. The probation officers first were shown the front room and kitchen, and then [Defendant] took them to the back yard. While in the back yard, [Defendant] casually, without questioning by the officers, mentioned he had just obtained a hot tub from the online site of Craig's list. Upon re-entering the home, [Defendant] showed PO McKinney [a] spare room/office in which a computer tower and monitor was in plain view, which was later determined to have an internet capable wireless (wifi) devices [sic] attached to it. Additionally, PO McKinney noted that [Defendant] had an Xbox gaming system hooked up to his computer, and she was aware that this device could likewise access the internet. At this time, PO McKinney asked [Defendant] if he would consent to a search of his residence. She then presented him with a consent to search form, which she explained to him that he didn't have to sign it, that he could withdraw his consent at any time, but everything found as a result could be used against him. . . . The [D]efendant, after acknowledging to PO McKinney that he understood he could refuse consent, signed the form[, authorizing a "complete search of said premises and curtilage." (Doc. 14 Ex. G.) ] Among other things, the "Consent to Search" form explicitly states that "any evidence found as a result of the search can be seized and used against me in any court of law[, and that I may withdraw my consent to search at any time prior to the conclusion of the search."] (Id.)

Upon doing so, PO McKinney explained to [Defendant] that they had reason to believe that he was using and accessing the internet, more specifically that he had a Facebook account which he was utilizing. She further asked him to turn over any items of contraband, specifically mentioning internet capable devices. He, in turn, provided PO McKinney with an internet capable cellular device/phone. Upon questioning him, [Defendant] stated he had been accessing the internet for one to one and a half years, but later changed his story to three to four years. While searching the residence, probation officers located the Seagate Brand Hard drive charged in the Indictment, along with

>numerous thumb drives (digital storage devices), and various CDs. At this time, PO McKinney noted that [Defendant] appeared visually nervous.
>
>Upon compiling a list of all the confiscated items, PO McKinney provided said list to [Defendant], which he signed acknowledging that they were taking these items. While doing such, PO McKinney told [Defendant] she would file a violation report, but that she would recommend that any revocation proceedings wait until after the confiscated devices could be examined. [Defendant] acknowledged that he understood.
>
>Among the devices seized was the Seagate external hard-drive . . ., which is now charged in the Indictment. A forensic examination of said devices revealed multiple video files with names and depictions consistent with child pornography . . . .

(Doc. 16 at pgs. 1-4.)

**MOTION TO SUPPRESS**

Defendant moves to suppress all evidence obtained from the search of the external hard-drive and other seized items, arguing that a search warrant based on probable cause was required to conduct a forensic search of the seized items. Defendant further argues that the written consent he gave to search his home did not authorize the forensic search of the hard-drive and other seized items.

The Government responds that a warrant was not required to conduct a forensic examination of the seized devices because Defendant was on supervised release, and, therefore, had a lower expectation of privacy in his residence/belongings, and there was reasonable suspicion to believe the devices contained evidence of a violation of supervised release. The Government further argues

that the written consent to search was given knowingly and voluntarily by Defendant, with the understanding that all evidence would be examined.

## DISCUSSION

## Was the Forensic Search of the Seized Items Valid

## Based Upon Reasonable Suspicion

"The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" United States v. Knights, 534 U.S. 112, 119 (2001) (quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)).  In Knights, the Supreme Court, in assessing the privacy interests of individuals on probation, observed that probationers "do not enjoy the absolute liberty to which every citizen is entitled." Knights, 534 U.S. at 119 (internal quotations and citations omitted).  In assessing the governmental interest side of the balance, the Knights Court observed that the Government has "the concern, quite justified, that [a probationer] will be more likely to engage in criminal conduct than an ordinary member of the community." Id. at 121. Likewise, an individual serving a term of supervised release has a diminished expectation of privacy and the Government has the same concerns regarding recidivism. See Samson v. California, 547

U.S. 843, 850, 854-55 (2006) (finding that parolees have fewer expectations of privacy than probationers and the State's concerns in protecting the public from criminal acts by reoffenders are even greater, because parole is more akin to imprisonment on the continuum of punishments; citing United States v. Reyes, 283 F.3d 446, 461 (2nd Cir. 2002), which held that the same principles apply to federal supervised release, as federal supervised release, in contrast to probation, is meted out in addition to, not in lieu of incarceration).; United States v. Weikert, 504 F.3d 1, 12-14 (1st Cir. 2007).

In Knights, the Supreme Court concluded that "when an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." Knights, 534 U.S. at 121. The present case is distinguishable from Knights in that the terms of Defendant's supervised release did not include a condition requiring him to submit to warrantless searches. In United Stats v. Yuknavich, 419 F.3d 1302, 1310 (11th Cir. 2005), the Eleventh Circuit Court of Appeals considered whether the lack of a search condition "upsets the *Knights* balancing test so as to require more than reasonable suspicion to justify a search" of a probationer's computer:

> [W]e must consider [the defendant's] expectation of privacy in his computer and computer related activities, i.e., accessing the Internet.
>
> First, we are mindful of the crime for which [the defendant] was on probation. It goes without saying that possession of child pornography is not a victimless crime. . . . "Sex offenders are a serious threat in this Nation . . . . States thus have a vital interest in rehabilitating convicted sex offenders."
>
> [The defendant's] Internet usage was explicitly restricted to "work related purposes" during "work hours." Given this limitation, [Defendant should have always been prepared for three questions: Do you have a computer? If yes, can you access the Internet? If yes, what are you doing online? Not only should he have been prepared to answer those questions, but he also should have been prepared for the officers to conduct their own research to find the answers. If the Internet restriction did not provide the officers with a greater ability to examine the life of [the defendant], then there would be little reason for it to exist.
>
> [The defendant's] expectation of privacy was further reduced because of his actions while on probation. He violated the terms of his release several times and often placed himself in situations that were inappropriate for a convicted child sex offender. By virtue of these infractions and inappropriate behavior, the officers were justified in monitoring him more closely and thereby imposing greater infringements on his privacy. . . .
>
> In sum, assuming the lack of a search condition heightened [the defendant's] expectation of privacy, it did not sway the *Knights* balancing test such that the probation officers needed more than reasonable suspicion to conduct a search of [the defendant's] computer.

Id. at 1310-11 (internal citation omitted).

In the present case, Defendant was not subject to a search condition but was subject to random home visits and confiscation of any contraband observed in plain view. Additionally, Defendant

was restricted from *any* internet access or possession of any internet capable software.  Thus, the conditions of Defendant's supervision were even more restrictive than the defendant's in Yuknavich.  Further, the Defendant was on supervised release for a prior conviction of using a means of interstate commerce to persuade a minor to have sex and Defendant violated the conditions of his supervision in 2008 by possessing internet capable devices and downloading adult pornography and child erotica.  During the home visit, internet capable devices were observed in plain view.  Given these circumstances, similar to those in Yuknavich, the undersigned concludes that Defendant had a diminished expectation of privacy in the hard-drive and other seized items and the Government had a legitimate interest in ensuring Defendant's compliance with the conditions of his supervised release, such that probation officers needed no more than reasonable suspicion to conduct a forensic search of the hard-drive and other seized items.

The next question, then, is whether reasonable suspicion existed.  Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a particularized and objective basis for suspecting wrongdoing. See United States v. Hamilton, 591 F.3d 1017, 1022 (8th Cir. 2010).  The probation officers in the present case knew of the nature of Defendant's prior conviction; the

restriction on Defendant's internet access and possession of internet capable software; and his prior violation of these conditions. Further, the probation officers had reason to believe that Defendant had again violated these conditions by utilizing a Facebook account and Defendant admitted that he had been accessing the internet for up to three to four years. Defendant also delayed in answering the door for the probation officers; when he did allow the officers in for the home visit, internet capable devices were observed in plain view; and Defendant appeared nervous when officers located the hard-drive and other digital storage devices. The totality of these circumstances certainly gave the officers reasonable suspicion to suspect that the hard-drive and other seized items contained evidence that Defendant had violated the conditions of release. Cf. Yuknavich, 419 F.3d at 1311 (probation officers had reasonable suspicion to engage in warrantless search of probationer's computer, where probationer delayed in opening the door and appeared nervous, officers saw a phone line running into a modem connected to computer, and officers knew of probationer's prior convictions for child pornography, of condition restricting his internet usage to work hours and work-related matters, and of prior unauthorized internet usage). The forensic search of these items was, therefore, proper, and Defendant's motion to suppress should be denied for this reason.

## Did Defendant's Written Consent to Search the Premises Extend to the Forensic Search of the Seized Items

The undersigned concludes that the search was also valid based upon Defendant's written consent to search the premises. Consensual searches are reasonable under the Fourth Amendment if they do not exceed the scope of the consent given. See United States v. Luken, 560 F.3d 741, 744 (8th Cir. 2009). The standard for measuring the scope of consent is objective reasonableness, that is, what would the typical reasonable person have understood by the exchange between the officer and the Defendant. Id.

Upon Defendant signing the consent form authorizing a complete search of his premises, Officer McKinney explained to Defendant that they had reason to believe he was accessing the internet to utilize a Facebook account, in violation of the conditions of his supervised release. Officer McKinney asked Defendant to turn over any contraband, specifically mentioning any internet capable devices. After compiling a list of the seized items, Officer McKinney advised Defendant that she would file a violation report, but that she would recommend that any revocation proceedings not take place until the seized items could be examined. Defendant acknowledged to Officer McKinney that he understood and he never, at any time, voiced any objection to officers examining the items seized, nor did he ever attempt to withdraw his consent.

A reasonable person, under these circumstances and under conditions of supervised release that prohibited all internet access and possession of any media containing nude depictions of children or sexually oriented or stimulating materials, would have understood from the exchange with Officer McKinney that the purpose of the search had to do with Defendant's internet usage, and, thus, would have understood that the consent being sought was to authorize a search of the hard-drive and other seized digital storage devices. This is especially true given that a previous unauthorized use of the internet by Defendant in 2008 resulted in his computer being seized and searched. Further, Defendant was specifically advised that the seized items would be examined and he gave no indication that he did not intend to consent to a search of these items. The undersigned, therefore, concludes that the scope of Defendant's consent to search included the hard-drive and other seized items. Cf. United States v. Lucas, 640 F.3d 168, 177-78 (6th Cir. 2011) (officers' search of defendant's laptop computer did not exceed the scope of defendant's consent to search his home for controlled substances, drug paraphernalia and other material or records pertaining to narcotics, where, prior to touching laptop, officers had already discovered marijuana plants in a closet and "grow" chart on keyboard tray; defendant disclosed to officers he used the internet to learn how to clone marijuana plants and to exchange information with other growers; officer

asked defendant if laptop was password-protected, and defendant replied it was not and never objected to the computer search); United States v. Thomas, 2008 WL 5096858 (9th Cir. Dec. 1, 2008) (where defendant's wife consented to officers' request to seize computers and officers informed her that if they took the computers they would search them for evidence, search of the computers was within the scope of wife's consent); United States v. Degaule, 797 F. Supp. 2d 1332, 1375-77 (N.D. Ga. 2011) (if defendant intended the scope of his consent to be limited, he had ample opportunity to object or clarify).

## CONCLUSION

Based upon the foregoing, the undersigned recommends that Defendant's **Motion to Suppress (Doc. 14)** be **DENIED** in all respects.

**Given that Defendant is set to proceed to trial on January 21, 2014, any written objections the parties wish to file pursuant to 28 U.S.C. § 636(b)(1) must be filed by January 14, 2014.  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**IT IS SO ORDERED** this 8th day of January, 2014.

                                                    /s/ *Erin L. Setser*
                                                  ERIN L. SETSER
                                                  UNITED STATES MAGISTRATE JUDGE